**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**JAMES HUGHES, INDIVIDUALLY AND ON**
**BEHALF OF CHLOE HUGHES AND ALL**
**OTHER HEIRS-AT-LAW AND WRONGFUL**
**DEATH BENEFICIARIES OF COREY**
**MAURICE HUGHES, DECEASED**                                    **PLAINTIFF**

**VS.**                                    **CAUSE NO.: 2:23-CV-00035-HSO-BWR**

**FORREST COUNTY, MISSISSIPPI; AND**
**JOHN DOES 1-10**                                    **DEFENDANTS**

---

**PLAINTIFF'S MEMORANDUM OF AUTHORITES IN SUPPORT OF RESPONSE**
**IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT**
**ON THE PLEADINGS**

---

COMES NOW the Plaintiff, James Hughes, by and through counsel, and files this, his Memorandum of Authorities in Support of Response in Opposition to Defendants' Motion for Judgment on the Pleadings, and in support of such response would show unto the Court the following:

## FACTS

On July 14, 2022, the Forrest County Sheriff's Department was called to the home of Corey Hughes ("Hughes"), an individual of known mental infirmity, in order to transport him

to a local hospital for mental health treatment. Prior to this call, the Forrest County Sheriff's Department was familiar with Hughes, having been called to his home for transport on approximately sixteen (16) previous occasions. Having extensive experience with Hughes, the Forrest County Sheriff's Department was aware that when Hughes was unmedicated they needed to take special precautions with him. Also, Hughes' various family members were known to the Forrest County Sheriff's Department and were at all times ready, willing, and able to assist with Hughes.

Upon arriving at Hughes' home, Forrest County Sheriff's Department deputies attempted to physically restrain Hughes for transport. During the course of restraining Hughes, a Forrest County Sheriff's deputy determined he would use deadly force against Hughes, a mentally ill individual, and discharged his firearm striking Hughes in his torso and head areas thereby killing him. Various members of Hughes' family were present to assist Sheriff's deputies and, in fact, witnessed Hughes being shot. Hughes subsequently died as a result of the use of deadly force by said Sheriff's deputy.

The use of deadly force was clearly unnecessary, considering the fact that Sheriff's deputies were called to Hughes' home for the purpose of transporting Hughes for mental health care, such deputies knew of Hughes' mental infirmity, that said deputies knew Hughes would need to be restrained, and that said deputies failed to use non-deadly force prior to the escalation to deadly force. Further, Sheriff's deputies knew Hughes' family members and other law enforcement officers were available for assistance.

On or about January 30, 2023, the Plaintiff commenced the present against Forrest County, Mississippi, and others. It is asserted that the subject Sheriff's deputies failed to act with the degree of training, knowledge, and experience of reasonably trained and/or qualified

officers in the restraint of a mentally ill individual. Further, the Plaintiff asserts that the Defendants acted in an outrageous manner and in violation of the Mississippi Tort Claims Act and 42 U.S.C. § 1983.

On July 11, 2023, the Defendants filed a Motion for Judgment on the Pleadings as to the Plaintiff's Federal claims, and only to this extent, pursuant to Fed. R. Civ. P. 8 and 12(c), and Local Rule 16. As will be shown below, the Defendants' motion should be denied in its entirety.

## ARGUMENT

### Legal Standard

The Defendants bring their motion pursuant to Rules 8 and 12(c) of the Federal Rules of Civil Procedure. "A Rule 12(c) motion is subject to the same standard as a motion to dismiss under FRCP 12(b)(6)." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019).

In order to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do. It must state a plausible claim for relief, rather than facts merely consistent with liability." *Heinze v. Tesco Corp.*, 971 F.3d 475 (5th Cir. 2020). A court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Heinze*, 971 F.3d at 477.

### Plaintiff Has Standing to Pursue All Claims

Mississippi's wrongful death statue provides, in relevant part, that –

**…The action for such damages may be brought in the name of** the personal representative of the deceased person or unborn quick child for the benefit of all persons entitled under the law to recover, or by widow for the death of her husband, or by the husband for the death of the wife, or by the parent for the death of a child or unborn quick child, **or in the name of a child, or in the name of a child for the death of a parent**, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or a brother for the death of a brother, **or all parties interested may join in the suit…** Except as otherwise provided in Section 11-1-69, **in such action the party or parties suing shall recover such damages allowable by law as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.**

In an action brought pursuant to the provisions of this section by the widow, husband, child, father, mother, sister or brother of the deceased or unborn quick child, or by all interested parties, such party or parties may recover as damages property damages and funeral, medical or other related expenses incurred by or for the deceased as a result of such wrongful or negligent act or omission or breach of warranty, **whether an estate has been opened or not.**

Any person entitled to bring a wrongful death action may assert or maintain a claim for any breach of expressed warranty or for any breach of implied warranty. **A wrongful death action may be maintained or asserted for strict liability in tort or for any cause of action known to the law for which any person, corporation, legal representative or entity would be liable for damages if death had not ensued.**

Miss. Code Ann. § 11-7-13 (2020) (emphasis added).

"The wrongful death statute allows the statutory heirs to recover damages for the defendant's wrongful, lethal conduct." *In re Estate of England*, 846 So. 2d 1060 (Miss. Ct. App. 2003). Therefore, "[t]o be entitled to recovery, the wrongful death plaintiff must prove that the wrongful conduct proximately caused the death." *Estate of England*, 846 So. 2d at 1062. If the wrongful death plaintiff meets this burden, then **"any damages for personal**

**injuries suffered by the decedent during his lifetime are also recoverable in the wrongful death suit."** *Id.* (emphasis added).

In the case *sub judice*, the Defendants contend that the Plaintiff lacks standing to bring claims under 42 U.S.C. § 1983. However, this contention is without merit and does not warrant dismissal of the Plaintiff Federal claims for lack of standing.

The Defendants' real objection is that the Plaintiff, in his role as representative and/or putative Guardian for Chloe Hughes, the decedent's only known surviving child and wrongful death beneficiary, and as the representative for all wrongful death beneficiaries and heirs-at-law of the decedent, is not the real party in interest, rather than an argument he lacks standing, to recover the particular damages sought in this action. (See attached Exhibit "A" – Petition for Appointment of Guardian). Nonetheless, with respect to the Plaintiff's standing to sue, "[i]t is well settled that Mississippi's standing requirements are quite liberal." *Hall v. City of Ridgeland*, 37 So. 3d 25 (Miss. 2010). "In Mississippi, parties have standing to sue when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law." *In re City of Biloxi*, 113 So. 3d 565 (Miss. 2013). That is, the Plaintiff has standing if his right "to assert a claim against a defendant [is] grounded in some legal right recognized by law, whether by statute or by common law." *City of Picayune v. Southern Reg'l Corp.*, 916 So. 2d 510 (Miss. 2005).

Pursuant to Mississippi's wrongful death statute, the Plaintiff, suing in the name of the decedent's only known child, as an interested party, and on behalf of the decedent's heirs-at-law, is a proper party to seek all relief sought in the subject Complaint. The Plaintiff is statutorily entitled to seek "all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit." *See* Miss. Code Ann. § 11-7-13 (2020).

Further, the Plaintiff was not required to open an estate on behalf of the decedent in order to pursue such claims. *Id.*

For purposes of the Mississippi wrongful death statute, as to the decedent's cause of death being caused by or attributed to the conduct of the Defendants, such is undisputed. Without question, the discharge of the Defendant officer's handgun caused the nearly instantaneous death of the decedent.

It must be noted that 42 U.S.C. § 1988 provides, in relevant part, that the jurisdiction of Federal district courts must be exercised in conformity with Federal law "so far as such laws are suitable to carry the same into effect." However, section 1988 goes on to provide that when Federal law is deficient in the provision of suitable remedies, state statutory or common law applies, unless it is inconsistent with the Constitution or Federal law, in which case that state statutory or common law is not to be applied. 42 U.S.C. § 1988. Because Federal law is silent on the question of wrongful death, and therefore deficient, § 1988 requires that the wrongful death law of the forum state must be applied unless it is inconsistent with the Constitution or Federal law. *Id.*

In a leading decision on survival and wrongful death, the United States Court of Appeals for the Fifth Circuit, in *Brazier v. Cherry*, drew no distinction for § 1983 and § 1988 purposes between the applicability of Georgia's survival statute and its wrongful death statute. *Brazier v. Cherry*, 239 F.2d 401 (5th Cir. 1961). The case concerned allegations that police brutality had caused decedent's beating and death. *Brazier*, 239 F.2d at 404. In concluding that § 1988 required the application of Georgia law in favor of the plaintiff, who was the surviving widow of the decedent, the Court treated survival and wrongful death concepts alike. *Id.*

Focusing on the "suitable remedies" language of § 1988, after dealing earlier with the "party injured" language of § 1983, the Fifth Circuit stated:

> The term "suitable remedies"… comprehends those facilities available in local state law but unavailable in federal legislation, which will permit the full effectual enforcement of the policy sought to be achieved by the statutes. And in a very real sense the utilization of local death and survival statutes does not do more than create an effective remedy…. To make the policy of the Civil Rights Statutes fully effectual, regard has to be taken of both classes of victims.

*Id.* at 405.

For the foregoing reasons, the Plaintiff asserts that he is a proper party to assert all of the claims contained within the subject Complaint, including all claims arising under 42 U.S.C. § 1983. However, should this Court determine that the Plaintiff is not a proper party to assert all claims therein, he requests, in the alternative, that he be permitted to amend his Complaint to add the Estate of Corey Hughes as a Co-Plaintiff. In fact, pursuant to Rule 17(a)(3) of the Federal Rules of Civil Procedure,  a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).

## **Defendants Not Entitled to Qualified Immunity**

The Civil Rights Act of 1866, partially codified at 42 U.S.C. § 1983, creates a private right  of action for redressing the violation of Federal law by those acting under color of state law. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75 (1984). It provides –

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured….

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights conferred elsewhere." *Albright v. Oliver*, 510 U.S. 266 (1994).

In order to prevail on a Section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him or her of a right secured by the Constitution or laws of the United States. *Blessing v. Freestone*, 520 U.S. 329 (1997). A plaintiff asserting a § 1983 claim must support such claim with specific facts demonstrating a Constitutional deprivation and may not simply rely on conclusory allegations. *See Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995).

A suit against a county official in his or her official capacity should be treated as a suit against the particular county. *Kentucky v. Graham*, 473 U.S. 159 (1985). Because the real party in interest in an official-capacity suit is the governmental entity, and not the named official, "the entity's policy or custom must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166.  For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses. *Id.*

Personal-capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the

deprivation of a federal right." *Id.* In *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Supreme Court determined that the words "every person," contained within § 1983, are accorded to include state and county officials in their individual capacities. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal defenses including qualified immunity. *Will*, 491 U.S. at 60. However, the defense of qualified immunity is unavailable to an official sued in his or her personal-capacity when the alleged wrongful conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

In the present action, the Plaintiff included as Defendants Forrest County, Mississippi, William Russell, in both his official and individual capacities, Wesley Harris, in both his official and individual capacities, Jeremy Jackson, in both his official and individual capacities, and Avery Hatten, in both his official and individual capacities. The pertinent allegations of the Plaintiff's Complaint focus on the actions of Forrest County, Mississippi, and the individual Defendants as being actionable under § 1983 and the Mississippi Tort Claims Act.

On July 11, 2023, the Defendants Russell, Harris, Jackson, and Hatten, filed a Motion to Dismiss alleging that dismissal is proper in that they are protected from suit by qualified immunity; importantly, the Defendant, Forrest County Mississippi, did not request dismissal. In particular, the Defendants argue that the Plaintiff's Complaint does not assert viable claims against them as to his Federal law claims. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577

U.S. 7 (2015).

When a § 1983 defendant raises the defense of qualified immunity, the burden shifts to the plaintiff. *Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th Cir. 2002). To overcome qualified immunity, a plaintiff must show -- (1) facts that demonstrate the officials violated a Federal Constitutional or statutory right, which (2) was clearly established at the time of the defendant's conduct. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

The right to privacy, though not specifically enumerated in the United States Constitution, has been found by the Supreme Court to exist by and through the First, Third, Fourth, Fifth, Ninth, and Fourteenth Amendments. *See, e.g., Roe v. Wade*, 410 U.S. 113 (1973); *Olmstead v. United States*, 277 U.S. 438 (1928). The fundamental right of bodily integrity and the right to be free from harm have been recognized by the Supreme Court as a part of one's right to privacy. As the Supreme Court opined in *Union Pac. Ry. Co. v. 4 Botsford*, 141 U.S. 250 (1891), "[N]o right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *See also Washington v. Harper*, 494 U.S. 210 (1990).

Questions regarding claims of excessive force are determined under the Fourth Amendment's "objective reasonableness" standard. *Tennessee v. Garner*, 471 U.S. 1 (1985). In considering the reasonableness of an officer's conduct, Courts must consider the speed with which an officer resorts to force where an officer deliberately, and rapidly, disregards lesser responses when such means are plainly available and obviously recommended by the situation. *Harmon v. City of Arlington*, 16 F.4th 1159 (5th Cir. 2021).

On July 14, 2022, the Forrest County Sheriff's Department, and in particular Defendant officers Russell, Harris, Jackson, and Hatten, were called to the home of the decedent, an individual of known mental infirmity, in order to transport him to a local hospital for mental health treatment. Prior to this call, the Forrest County Sheriff's Department was familiar with the decedent, having been called to his home for transport on approximately sixteen (16) previous occasions. Having extensive experience with Hughes, the Forrest County Sheriff's Department was aware that when Hughes was unmedicated they needed to take special precautions with him. Further, Hughes' various family members were known to the Forrest County Sheriff's Department and were at all times ready, willing, and able to assist with Hughes.

Upon arriving at Hughes' home, the Defendant officers Russell, Harris, Jackson, and Hatten, attempted to physically restrain Hughes for transport. During the course of restraining Hughes, Defendant officer Russell, determined he would use deadly force against Hughes, a mentally ill individual, and discharged his firearm striking Hughes in his torso and head areas thereby killing him. Various members of Hughes' family were present to assist Sheriff's deputies and, in fact, witnessed Hughes being shot. Hughes subsequently died as a result of the use of deadly force by Russell, all without any intervention on the part of Defendants Harris, Jackson, or Hatten to prevent the use of deadly force by Defendant Russell.

The use of deadly force was clearly unnecessary, considering the fact that the Defendant officers did not act to de-escalate the circumstances but, rather, nearly instantaneously resorted to the use of deadly force without prior warning. As the Supreme Court found in *Garner*, a warning before deadly force is used is a critical component of risk assessment and de-escalation. *Garner*, 471 U.S. at 5. The Defendant officers were merely

called to Hughes' home for the purpose of transporting Hughes for mental health care, which they had done on multiple previous occasions. Such deputies knew of Hughes' mental infirmity, and knew that Hughes would need to be restrained. Moreover, the Defendant officers knew Hughes' family members and other law enforcement officers were available for assistance, yet they did not request assistance.

By using deadly force against the decedent which resulted in his death, the Defendant officers clearly violated well-known Constitutional rights, namely the Plaintiff's right to be free from bodily harm and the prohibition against excessive force. The violation of Hughes' Constitutional rights was the result of improper and unlawful actions by the Defendant officers which were part of a pattern or practice. This pattern or practice involved the use of excessive force, the failure to properly hire, train, and supervise officers as to the use of deadly force and the proper protocol to be used in dealing with mentally deficient individuals, and the failure to use proper de-escalation techniques rather than deadly force.

The Plaintiff asserts that the Defendant officers clearly acted in violation of the Plaintiff's right to privacy and right to be free from excessive force. Further, the Defendant officers violated the Forrest County Sheriff's Department's policies and procedures regarding the use of deadly force and de-escalation. (See attached Exhibit "B" – FCSD Policies and Procedures – Firearms Regulations). In particular, although not limited to such, the Defendant officers violated the following provisions of the Forrest County Sheriff's Department's policies and procedures:

CORE PRINCIPLES

1. Response to Resistance: Firearms: The discharge of a firearm is always considered as deadly or lethal response to resistance incident.

**As with all other weapons, the use of a firearm is strictly limited. Members shall discharge their firearms only as a last resort**, when all reasonable measures to avoid a response to resistance incorporating deadly or lethal force have been exhausted or when the member has no reasonable or safe choice but to discharge the firearm.

2. Sanctity of Human Life: Members shall make every effort to preserve human life in all situations.

3. Peaceful Resolutions: **Members shall avoid a response to resistance unless it is not possible to do so.**

4. De-Escalation: **Members shall use de-escalation techniques and tactics to reduce any threat or gain compliance to lawful commands without the use of response to resistance or if a response to resistance is necessary, apply the lowest level of response to bring a situation under control** (See Policy GP-7.1.1, De-Escalation and Policy CP-2.1.2, Response to Resistance).

5. Avoiding Escalation: **Members shall not do or say anything that provokes or causes an escalation of an encounter unless necessary to achieve a lawful purpose.**

6. Response to Resistance: Reasonable, Necessary, and Proportional: **Members shall use only the response to resistance that is reasonable, necessary, and proportional to respond to the threat or resistance to effectively and safely resolve an incident**, and will immediately reduce the level of the response to resistance as the threat or resistance diminishes.

7. Duty to Intervene: **Members shall intervene to prevent the abusive conduct or the use of excessive response to resistance by another member.**

<u>DIRECTIVES</u>

8. Permitted Uses of a Firearm **Any response to resistance, but particularly the exhibiting, pointing, or discharging of a firearm, must be preceded by an analysis, to the greatest extent possible, applying the principles of the sanctity of life, critical thinking and decision-making, and de-escalation.** These principles must be an ever-present priority as a member is making the serious decision of whether to use any type of response to resistance, and particularly deadly or lethal response to resistance.

(See attached Exhibit "B" – FCSD Policies and Procedures – Firearms Regulations) (emphasis added).

Finally, it must be pointed out that a civil action under § 1983 is often the only way for a victim of official misconduct, such as the Plaintiff and/or Hughes, to vindicate their federally guaranteed rights. However, qualified immunity often bars even those plaintiffs who can prove their case from remedying a wrong -- harm, but no foul. Qualified immunity thus enables public officials who violate Federal law to sidestep their legal obligations to the victims of their misconduct. In so doing, qualified immunity corrodes the public's trust in those officials -- law enforcement in particular -- making on-the-ground policing more difficult and dangerous for all officers, including that vast majority who endeavor to uphold their Constitutional obligations. Without the trust of their communities, officers cannot safely and effectively carry out their responsibilities. "Being viewed as fair and just is critical to successful policing in a democracy. When the police are perceived as unfair in their enforcement, it will undermine their effectiveness." Inst. on Race and Justice, Northeastern  Univ., *Promoting Cooperative Strategies to Reduce Racial Profiling,* at 20–21 (2008).

Based on the foregoing, the Defendants' Motion to Dismiss should be denied. In the alternative, should this Court consider granting the Defendants' Motion to Dismiss, the Plaintiff would respectfully request that he be permitted to file an Amended Complaint to include as a Plaintiff the Estate of Corey Hughes, Deceased, upon the opening of a such Estate in the Chancery Court of Forrest County, Mississippi.


WHEREFORE, PREMISES CONSIDERED, the Plaintiff, James Hughes, prays that this Court enter an Order denying the Defendants' Motion to Dismiss in its totality. In the

alternative, should this Court consider granting the Defendants' Motion to Dismiss, the Plaintiff would respectfully request that he be permitted to file an Amended Complaint to include as a Plaintiff the Estate of Corey Hughes, Deceased, upon the opening of a such Estate in the Chancery Court of Forrest County, Mississippi. The Plaintiff further requests such other and further relief to which he may show himself to be justly entitled.

Dated:   July 25, 2023.

Respectfully submitted,

JAMES HUGHES, *Plaintiff*

/s/ Dennis C. Sweet, III
Dennis C. Sweet, III

OF COUNSEL:

Dennis C. Sweet, III (MSB #8105)
SWEET & ASSOCIATES
158 East Pascagoula Street
Jackson, Mississippi 39201
Telephone:  (601) 965-8700

## CERTIFICATE OF SERVICE

I, Dennis C. Sweet, III, do hereby certify that I have this date filed a true and correct copy of the above and foregoing pleading with the Clerk of Court, via this Court's MEC/ECF electronic filing system, which provided a copy of the same to all counsel of record.

This, the 25th day of July, 2023.

/s/ Dennis C. Sweet, III
Dennis C. Sweet, III